**NATIONAL STEEL & SHIPBUILD-
ING COMPANY, Petitioner**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**361**

National Labor Relations
Board, Petitioner

v.

National Steel & Shipbuilding
Company, Respondent.

Nos. 06–1345, 06–1391.

United States Court of Appeals,
District of Columbia Circuit.

Nov. 20, 2007.

Theodore R. Scott, Littler Mendelson, PC, San Diego, CA, for National Steel & Shipbuilding Company.

Aileen A. Armstrong, Deputy Associate General Counsel, David S. Habenstreit, Attorney, Heather Stacy Beard, National Labor Relations Board (NLRB) General Counsel, Washington, DC, for National Labor Relations Board.

Before: HENDERSON, ROGERS and TATEL, Circuit Judges.

### *JUDGMENT*

PER CURIAM.

These cases were heard on the record from the National Labor Relations Board and on the briefs and arguments of counsel. It is

**ORDERED** that the petition for review is denied and the cross-application for enforcement is granted.

The National Labor Relations Board (Board) found that National Steel & Ship-

building Co. (NASSCO) violated section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5), (Act) by unilaterally selecting a bargaining unit employee to fill a vacant joint union Health and Safety Representative (Representative) position. 348 N.L.R.B. No. 23 (2006). NASSCO argued that the Board's decision was not supported by substantial evidence because NASSCO did not change an established practice. Alternatively, NASSCO contended that the unions[1] waived the right to bargain over the appointment. We uphold the Board's decision because it is supported by substantial evidence in the record and the Board did not act arbitrarily or otherwise err in applying established law to the facts of the case. *Tradesmen Int'l, Inc. v. NLRB,* 275 F.3d 1137, 1141 (D.C.Cir.2002) (citing *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. NLRB,* 41 F.3d 1532, 1536 (D.C.Cir. 1994)).

Beginning in 1980, NASSCO had collective-bargaining agreements with seven unions representing discrete bargaining units of the shipyard employees. Contractual provisions in each of the contracts gave the unions the joint power to appoint the Representative. NASSCO's collective-bargaining agreements with the seven unions expired in 1992. Although NASSCO and the unions were unable to agree on new contracts, NASSCO implemented a proposal which gave NASSCO the right to approve whomever the unions appointed as the Representative. Following a 2002 election, the Board certified a new union, the Shipyard Workers, to represent employees who had previously been represented by four of the original seven unions. Three of the original seven unions remained.[2] NASSCO and the Shipyard Workers engaged in collective bargaining but were unable to reach an agreement. Subsequently, NASSCO implemented its final offer which included a provision giving it the right to approve the unions' appointee as the Representative.[3]

In January 2005, the incumbent Representative informed NASSCO that he intended to retire on February 4, 2005. The Machinists and IBEW submitted the name of Robert Johnson as their joint nominee to fill the pending vacancy, while the Shipyard Workers submitted the name of Enrique Torres as the joint appointee.[4] NASSCO responded to the unions by letter on February 3, 2005, explaining that NASSCO required a letter signed by a representative from each of the four unions identifying their joint appointee. When NASSCO did not receive a response, it sent the unions another letter on February 11, 2005, stating that it would select one of the two candidates (Johnson or Torres) to serve as the interim Representative until the unions selected a joint appointee. The Unions then notified NASSCO of their position that NASSCO "do[es] not have a right to select the [Representative]." JA 309. On February 18, 2005, however, when NASSCO had still

---

1. The International Brotherhood of Electrical Workers Local 569 (IBEW), the International Union of Operating Engineers Local 12 (Operating Engineers), the International Association of Machinists Local 389 (Machinists) and the Shipyard Workers Union (unions) currently represent NASSCO employees.

2. The remaining unions included the IBEW, the Operating Engineers and the Machinists.

3. The provision stated that "[t]he unions currently certified to represent Company employees may jointly appoint and maintain one (1) employee as a full-time paid Health and Safety Representative.... The appointment and continued service of a paid Health and Safety Representative is subject to approval by the Safety Manager...." Joint Appendix (JA) 249.

4. It appears that the Operating Engineers did not join in either submission.

not received a joint nominee from the unions, it sent a final letter stating that it intended to install Johnson as the interim Representative. NASSCO explained that it intended to recognize Johnson as the permanent Representative if the unions did not select a joint appointee by March 1, 2005. When NASSCO did not receive a response by March 1, 2005, it named Johnson as the permanent Representative.

■ NASSCO first argues that no established practice existed governing the appointment of the Representative in the absence of the unions' submission of a joint nominee. The Board, adopting the factual findings of the administrative law judge (ALJ), concluded that the language of NASSCO's implemented final offer "is clear and unambiguous that only the unions jointly have the right to appoint candidates" and "[n]o plausible interpretation . . . suggests [NASSCO] can appoint a [Representative]." 348 N.L.R.B. No. 23, slip op. at 5. Additionally, the Board found that "[t]he only past practice is that the unions jointly submitted candidates for the position." *Id.* The Board cited the testimony of Shipyard Workers President Robert Godinez (Godinez) that there were "many times" the unions could not agree on a joint appointee. JA 78. Godinez testified on cross-examination that, once in the 1990s, the unions disagreed over an appointment and the position was left vacant for approximately one month until a joint candidate was submitted. JA 79. Although sparing, substantial evidence thus supports the Board's conclusion that NASSCO violated section 8(a)(5) of the Act by unilaterally changing a condition of employment. *See Truck Drivers, Oil Drivers, Filling Station & Platform Workers Local No. 705 v. NLRB,* 509 F.2d 425, 426–27 (D.C.Cir.1974) (single remark may constitute substantial evidence); *cf. Mich. Consol. Gas Co. v. FERC,* 883 F.2d 117, 124 (D.C.Cir.1989) (FERC's reliance on evidence from single source "does not alone make it either invalid or insubstantial").

■ NASSCO also contests the Board's conclusion that the unions did not waive the right to bargain because, in the Board's view, "a request to bargain would [have been] futile." 348 N.L.R.B. No. 23, slip op. at 5. "A union is 'not required to go through the motions of requesting bargaining,' . . . if it is clear that an employer has made its decision and will not negotiate." *Regal Cinemas, Inc. v. NLRB,* 317 F.3d 300, 314 (D.C.Cir.2003) (quoting *Gratiot Cmty. Hosp.,* 312 N.L.R.B. 1075, 1080 (1993), *enforced in part,* 51 F.3d 1255 (6th Cir.1995)). On February 18, NASSCO sent the unions a letter advising that "[i]f the four unions have not made a joint appointment by March 1, 2005, then [NASSCO] intends to recognize Mr. Johnson as the permanent Union Health & Safety Representative." JA 310. NASSCO had not provided the unions with any notice other than the February 18 letter that it intended to name Johnson as the permanent Representative. The Board reasonably interpreted the letter as presenting the unions with a *fait accompli* rather than inviting the unions to bargain over the issue. *See Regal Cinemas,* 317 F.3d at 314 (employer presented union with *fait accompli* when it "simply informed" union of its decision to eliminate position rather than asking union to negotiate); *Int'l Ladies' Garment Workers Union v. NLRB,* 463 F.2d 907, 919 (D.C.Cir.1972) ("Notice, to be effective, must be given sufficiently in advance of actual implementation of a decision to allow reasonable scope for bargaining."); *Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R. v. NLRB,* 414 F.3d 158, 167 (1st Cir.2005) (offer to negotiate after decisions were made constitutes offer to negotiate over *fait accompli* ). Again, substantial evidence supports

the Board's determination that the unions did not waive the right to bargain.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.